UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| ARLENE MARTIN, ) | |
| ) | |
| Plaintiff, ) | No. 15 cv 2078 EJM |
| vs. ) | |
| ) | ORDER |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff brings this action seeking judicial review of the Commissioner's denial of her application for disability benefits under the Social Security Act, 42 U.S.C. §§ 416, 423. Briefing concluded March 9, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Reversed and remanded.

Plaintiff asserts the Administrative Law Judge (ALJ) failed to give proper controlling weight to the opinion of plaintiff's two treating physicians. Plaintiff asserts that the Commissioner's decision is thus not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision...Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F2d 836, 838 (8th Cir. 1992).

The ALJ found that plaintiff suffered from major depressive disorder, degenerative disc disease, generalized anxiety disorder, post-traumatic stress disorder (PTSD), drug

and alcohol abuse, chronic obstructive pulmonary disease (COPD), and carpal tunnel syndrome (CTS). On April 6, 2015, after a hearing, the ALJ found that plaintiff's impairments did not constitute disability.

Upon review, it is the court's view that the ALJ failed to give appropriate weight to the opinions of the treating physicians, Mohammad Afridi, M.D., and Carroll Roland, Ph.D. Dr. Afridi had been managing Martin's psychiatric medications since 2009 when he provided his opinions concerning her mental limitations in October of 2014. (See Tr. 822). Dr. Afridi opined that plaintiff had moderate limitations in activities of daily living; marked limitations in social functioning; frequent deficiencies of concentration; and continual episodes of decompensation (Tr. 36, 826). He also opined that plaintiff would likely miss work three or more times per month (Tr. 36, 824).

Dr. Afridi attached records to his report which showed he had diagnosed Martin with major depressive disorder, recurrent, severe; PTSD; anxiety disorder NOS, sexual abuse of adult; sexual abuse of child; and alcohol dependence, in remission. (See Tr. 822, 829). Dr. Afridi noted Martin had numerous symptoms including sleep disturbance, mood disturbance, emotional liability and intrusive recollections of a traumatic experience. (Tr. 822). Dr. Afridi explained that "[e]pisodes of severe depression, feelings of helplessness, hopelessness, social withdrawal, agitations and intrusive negative traumatic memories" demonstrated the severity of Martin's mental impairments. (Tr. 823). Dr. Afridi noted Martin's prognosis was poor and listed her current medications. (Tr. 823).

Dr. Afridi expected Martin to miss more than three days of work per month due to her mental impairments if she tried to work. (Tr. 824). Dr. Afridi noted marked limitations with understanding and memory and sustained concentration and persistence. (Tr. 825).

2

Dr. Afridi noted marked limitations in interacting with the general public and moderate limitations in other categories of social interaction. (Tr. 825). Dr. Afridi noted functional limitations that met Listing 12.04B due to Martin's limitations in social functioning, in concentration, persistence or pace, and her continual episodes of deterioration or decompensation. (*See* Tr. 100, 826).

The Eighth Circuit recently explained when controlling or substantial weight is to be afforded to treating physician opinions:

> The ALJ must give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Wagner v. Astrue*, 499 F.3d 842, 848–49 (8th Cir.2007) (internal quotation marks and emphases omitted). See S.S.R. 96–2p, Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("Not inconsistent . . . is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir.2007). It may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may discount or even disregard the opinion ... where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir.2015).

Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015).

The ALJ assigned Dr. Afridi's opinion little weight because Dr. Afridi's mental status examinations in the records attached to his October 2014 opinions concerning Martin's limitations were generally within normal limits, specifically citing

records from July 3, 2013 (Tr. 829) and September 8, 2014 (Tr. 855). (Tr. 36–37). The ALJ chose not to discuss findings in mental status examination findings on August 20, 2013 (Tr. 834–35, noting a suicide attempt on July 11, 2013 and noting a highly emotional state after the suicide attempt with severe financial and other stressors), September 23, 2013 (Tr. 838, noting frightening dreams, lethargic speech, rarely leaving house, migraine headaches, and noting "Arlene's mood is often linked to the attitude and understandings of her sons who live in Florida"), October 2, 2013 (Tr. 840, noting alert and anxious appearing), October 7, 2013 (Tr. 844, noting stressed, trust issues, fear to leave house or yard, thinking herself crazy and frightened, struggling with transfer to another therapist), November 7, 2013 (Tr. 848, noted low mood and worried), and August 25, 2014 (Tr. 851, noting distractable attention; anxious, blunted, dysphoric, helpless, sad, worried, mood and affect; decreased interest and energy; decreased sleep; and noting "she needs a stable environment owing to her underlying severe fragility"). On balance, considering all the treatment notes, these mental status examination findings are consistent with Dr. Afridi's opinions.

The September 8, 2014, treatment record cited by the ALJ is also consistent with Dr. Afridi's opinions: the mental status examination noted fair insight and judgment; distractable attention and concentration; decreased interest and energy; no change in sleep; and "[o]verall she continues to be fragile, mood is stable but still prone to depression and will benefit from the Integrated Home Health Program." (Tr. 856–57) The ALJ's reliance on the July 3, 2013, record is also misplaced; Martin attempted suicide the next week. (*See* Tr. 834–35).

The ALJ also erred in disagreeing with Dr. Afridi that when Martin's status was "stable" she was able to perform substantial gainful activity. (*See* Tr. 36–37, noting

4

stability in July 2012, July 2013, and September 2014). As the treatment notes explained, Martin had "persistent fragility" and "limited capacity to tolerate stress and change in her life" that warranted social security disability benefits. (Tr. 851). Martin had been able to tolerate some limited work at times. (*See* Tr. 644, 648). When Martin pushed herself to perform close to substantial gainful activity, she unraveled. (*Cf.* Tr. 674, 671, 673) (working full-time at Walmart had led to breakdown and hospitalization and inability to work at all); (*Cf.* Tr. 670, 666, 665, 662, 661) (return to work at Walmart and stable working 24 hours per week, attempted to increase her hours resulted in increased stress, leading to her becoming overwhelmed and quitting, then realizing "she is more able to handle a part-time job than a full time one); (*Cf.* Tr. 657, 654, 651, 650, 648, 647) (starting work at Dollar General, taking on fulltime work, becoming overwhelmed and walking off the job).

An ALJ is required to consider how stress affects an individual's ability to work. *See, e.g.*, Grissom v. Barnhart, 416, F.3d 834, 837-38 (8th Cir. 2005); Buck v. Bowen, 885 F.2d 451 (8th Cir. 1989) (Plaintiff's claim should have been assessed with regard to whether his intolerance for stress limited his ability to perform work); Gunnels v. Bowen, 867 F.2d 1121 (8th Cir. 1989) (ALJ should have considered effect of claimant's physical and psychological reaction to stress in assessing her ability to perform her past relevant work as a switchboard operator, where she testified that any stress brought on shortness of breath, that she experienced stress when communicating with people, and that she was afraid that any activity would exacerbate her condition); *see* Leggett v. Chater, 67 F.3d 558 (5th Cir. 1995) (ALJ is required to consider an individual's inability to handle stress when determining if the impairment limits the person from working);

Pappas-Sanavaitis v. Chater, 978 F. Supp. 782 (N.D. Ill. 1997) (plaintiff's stress impairments were not adequately considered).

The Eighth Circuit has explicitly held that an ALJ cannot rely on the claimant's ability to perform limited functioning during a period of low stress as substantial evidence that a claimant who sometimes experiences high stress is not disabled:

> Given the unpredictable course of mental illness, "[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir.1996). Moreover, "[i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). "Such individuals may be much more impaired for work than their signs and symptoms would indicate." Id.

Hutsell v. Massanari, 259 F.3d 707 (8th Cir. 2001). The ALJ did not properly consider the impact stress had on Martin's ability to function, which led to an improper rejection of Dr. Afridi's opinions and Martin's claim for disability benefits.

Finally, the ALJ failed to discuss the supporting opinions of Diane Holmes, LISW, of Black Hawk Grundy Mental Health Center, plaintiff's long-time treating therapist, in his opinion. Ms. Holmes' opinions that Martin could not perform full-time work (see, e.g. Tr. 648) further support Dr. Afridi's treating physician opinion and further show the ALJ's reason for assigning Dr. Afridi's opinions little weight was not supported by substantial evidence.

The Commissioner also failed to give proper weight to the opinion of Carroll Roland, Ph.D. Dr. Roland's opinion was straightforward—due to Martin's difficulties handling stress, she was unsuitable for full time entry level competitive employment. (Tr. 901). The ALJ gave this opinion little weight because the ALJ found "Dr. Roland relied too heavily on the claimant's own subjective complaints" and there was "nothing in the

record supporting that the claimant was a reliable informant." (Tr. 37). The ALJ also argued Dr. Roland's "extreme limitations" were not supported by the medical evidence or his observations in the report. (Tr. 37).

The ALJ listed "her speech was not spontaneous" as a mental status examination finding that was inconsistent with Dr. Roland's limitations. (Tr. 37). Dr. Roland, a psychologist, is better able to interpret the significance of this finding than the ALJ. The ALJ did not consider the importance of the following findings by Dr. Roland that "applicant was tearful throughout the evaluation" and "applicant was trembling throughout the evaluation." (Tr. 899). Additionally, Martin was unable to compute serial 7's, was unable to identify the governor, reported she was "always sad", was only able to interpret one of two proverbs, and required a payee due to difficulties managing finances. (Tr. 899–900). When the medical records, and the opinions of Dr. Afridi and Ms. Holmes, are reviewed, it is clear Dr. Roland was not relying only or even primarily on Martin's subjective complaints. The ALJ's finding to the contrary is not supported by substantial evidence.

The ALJ's reasons for assigning Dr. Afridi's and Dr. Roland's opinions little weight are not supported by substantial evidence. The ALJ was, in effect, substituting his judgment for the opinion of plaintiff's treating physicians. The Court of Appeals has said many times that is error. *See, e.g.* Easter v. Bowen, 867 F.2d 1128, 1131 (8th Cir.1989); Bergquist v. Astrue, 818 F. Supp. 2d 1125. 1131-32 (S.D. Iowa 2011). Because Dr. Afridi's and Dr. Roland's limitations and opinions are well-supported by the record as a whole, including mental status examination findings, they should have been afforded substantial weight.

7

A remand is required so the ALJ can properly evaluate the opinions of Dr. Afridi and Dr. Roland. A more thorough review of the medical records, Martin's work history, the mental health records, and a proper consideration of the effect stress has on Martin's ability to work, is required.

It is therefore

ORDERED

Reversed and remanded for further proceedings in accordance herewith.

March 28, 2016

Edward J. McManus, Judge
UNITED STATES DISTRICT COURT